UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MECCA ALLAH SHAKUR,[1]                :
          Plaintiff,                  :
                                      :
     v.                               :        CASE NO. 3:08-cv-1187 (VLB)
                                      :
RICHARD G. FUREY, et al.,             :
          Defendants.                 :        April 8, 2010

MEMORANDUM OF DECISION DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [Doc. #32] AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT [Doc. #30]

The Plaintiff, Mecca Allah Shakur, commenced this action pro se against the

Defendants, Health Services Administrator Richard G. Furey and Doctors Mark

Buchanan, Syed Naqvi, Rick Ruiz, and Monica Farinella.  The Plaintiff alleges that

the Defendants improperly denied his request for shoes with special lifts.  Both

parties move for summary judgment.  For the reasons that follow, the Plaintiff's

motion for summary judgment is DENIED and the Defendants' motion for summary

judgment is GRANTED.

I.  Standard of Review

In a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

therefore entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.;

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The moving party may

satisfy this burden "by showing – that is pointing out to the district court – that

there is an absence of evidence to support the nonmoving party's case."  PepsiCo,

---

[1] The Plaintiff also is known as Ronnie Hinton.

<u>Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," <u>Anderson</u>, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  <u>Patterson v. County of Oneida, NY</u>, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  <u>Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004).  However, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff].'" <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 252)).

Lastly, <u>pro se</u> litigants are entitled to an "accessible" explanation of Rule 56 of the Federal Rules of Civil Procedure, and the implications of a motion for summary judgment:

> We take this opportunity to briefly discuss the interplay between Rule 56 of the Federal Rules of procedure ("Rule 56") and the <u>pro se</u> litigant who does not move for summary judgment.  And we remind the district courts of this circuit, as well as summary judgment

**2**

> movants, of the necessity that pro se litigants have actual notice, provided in an accessible manner, of the consequences of the pro se litigant's failure to comply with the requirements of Rule 56.

Irby v. New York City Transit Authority, 262 F.3d 412, 414 (2d Cir. 2001). The Defendants have complied with this requirement via notice provided to the Plaintiff on October 1, 2010 informing him, inter alia, that the Defendants' motion for summary judgment may be granted and his claims may be dismissed if he failed to file opposition papers as required by Fed. R. Civ. P. 56 and Local R. 56.  See Doc. #29.

## II.  Facts[2]

The Plaintiff was confined at the MacDougall-Walker Correctional Institution at all times relevant to this action.  In February 2007, the Plaintiff settled three lawsuits with the State of Connecticut.[3]  As part of the settlement agreement, the State agreed that the "Plaintiff shall be promptly seen by medical staff for evaluation for orthopedic footwear acceptable to the parties."

On February 15, 2007, Dr. Fedus, a podiatrist, examined the Plaintiff.  Dr. Fedus noted that Plaintiff's right leg was 3/8" shorter than his left leg, and determined that the length discrepancy could be treated by placing a lift in the shoe on the shorter leg.  At the Plaintiff's request, however, Dr. Fedus submitted a request to the Utilization Review Committee for Clark brand shoes with a built-in

---

[2] The facts are taken from the statements filed by both parties pursuant to D. Conn. L. R. 56(a)1 and (a)2 and the attached exhibits.  See Docs. ##30, 31, 32.

[3] Shakur v. Dzurenda, et al., 3:04cv1835 (WIG); Shakur v. Dzurenda, et al., 3:05cv768 (SRU); and Shakur v. Ashraf, et al.,  3:05cv694 (RNC).

lift.

The Utilization Review Committee ("URC"), consisting of Defendants Mark Buchanan, Syed Naqvi, Ricardo Ruiz, and Monica Farinella, denied the request. They noted that Dr. Fedus had provided the Plaintiff a heel lift for his shoe that the Plaintiff chose not to use.  Based on Dr. Fedus' report, the URC concluded that the Plaintiff did not require footwear that was not available from the prison commissary.

Defendant Furey, the Health Services Administrator at MacDougall-Walker Correctional Institution, is not a medical professional and does not make treatment decisions.  He does review medical grievance appeals and denied the Plaintiff's grievance appeal.

### III.  Discussion

The Plaintiff asserts three claims in this action:  first, that the Defendants failed to comply with the terms of a settlement agreement in other cases; second, that the Defendants were deliberately indifferent to his serious medical need; and third, that Defendant Furey denied his Fourteenth Amendment right to due process by failing to respond to his grievance appeal and failing to handle his grievance papers properly.

### A.  Compliance with Settlement Agreement

In February 2007, the Plaintiff settled three federal cases.  The settlement agreement provided, in part, that the "Plaintiff shall be promptly seen by medical staff for evaluation for orthopedic footwear acceptable to the parties."  Doc. #32,

**4**

Pl.'s Mem., Ex. A at 3.  The Plaintiff argues that the Defendants have breached the agreement because he was not provided orthopedic shoes.  Instead, he was provided a lift for his shoe, a resolution not acceptable to him.  The Defendants argue that the Plaintiff's claim is not cognizable in this action.

The Supreme Court has held that, if the district court does not retain jurisdiction over a settlement agreement, any action to enforce provisions of a settlement agreement approved by the district court must be brought as a breach of contract action in state court.  See Kokkonen v. Guardian Life ins. Co., 511 U.S. 375, 381-82 (1994).

The settlement agreement at issue specifically provides:  "This agreement terminates the jurisdiction of the court over these matters and any motion filed subsequent to the dismissal of these cases shall be dismissed as the court shall be without jurisdiction."  Doc. #32, Pl.'s Mem., Ex. A at 4.  Because the district court did not retain jurisdiction over the settlement agreement, the Plaintiff's recourse for breach of the agreement is a state action for breach of contract.  The federal district court lacks jurisdiction over a dispute relating to enforcement of an agreement, even where the agreement resulted in the dismissal of a federal lawsuit.  See Kokkonen, 511 U.S. at 378.  Accordingly, the Defendants' motion for summary judgment is granted and the Plaintiff's motion for summary judgment is denied on the Plaintiff's claim to enforce the provisions of the settlement agreement.

### B.  Official Capacity Claims

The Defendants argue that the Eleventh Amendment bars all claims against them in their official capacities.  The Eleventh Amendment precludes any award of monetary damages against the Defendants in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  It does not, however, preclude claims for injunctive relief.  See Edelman v. Jordan, 415 U.S. 651, 667-68 (1974) (Eleventh Amendment does not bar claim for prospective injunctive relief).

The Plaintiff seeks injunctive relief as well as damages.  Accordingly, the Eleventh Amendment bars only claims for damages against the Defendants in their official capacities.

### C.  Deliberate Indifference to Serious Medical Need

The Plaintiff next argues that the Defendants were deliberately indifferent to his serious medical need because he was seen by a podiatrist rather than an orthopedist and was not given orthopedic shoes to correct his leg length discrepancy.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  Id. at 104-06.

Because mere negligence will not support a section 1983 claim, not all

**6**

lapses in prison medical care constitute a constitutional violation.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).  In addition, inmates are not entitled to the medical treatment of their choice.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  Mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.  "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).  The conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988).

There are both subjective and objective components to the deliberate indifference standard.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994); Foote v. Hathaway, 513 U.S. 1154 (1995).  Objectively, the alleged deprivation must be "sufficiently serious."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration or extreme pain.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions.  Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition.  For example, a medical condition significantly affecting the inmate's daily activities or causing chronic and significant pain, or the existence of an injury a reasonable doctor would find

**7**

important, constitutes a serious medical need.  See Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998).  In addition, where the denial of treatment causes the plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

Not all medical conditions satisfy the objective component of the deliberate indifference standard.  See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw not serious medical needs); Sonds v. St. Barnabas Hosp. Correctional Health Servs., 151 F. Supp. 2d 308, 311 (S.D.N.Y. 2001) (cut finger with skin ripped off not a serious medical need); Henderson v. Doe, No. 98 Civ. 5011, 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (broken finger not a serious medical need); Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999) (foot condition involving a fracture fragment, bone cyst and degenerative arthritis not a serious medical need); Alston v. Howard, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996) (claimed need for special footwear for complaint of ankle pain not a serious medical need).

The Plaintiff contends that his 3/8" leg length discrepancy is a serious medical need.  However, he provides no case law or medical opinion supporting this assertion.  Other courts addressing this issue have held that leg length disparity is not a serious medical need.  See Turner v. Solorzano, No. 3:04-cv-632-J-32MMH, 2006 WL 2523410, at *3 (M.D. Fla. Aug. 30, 3006) (finding that 3/8" disparity in length of inmate's legs was not a serious medical need), aff'd, 228 Fed. Appx. 922, 923-24 (11th Cir. 2007); Haverty v. Crosby, No. 1:05-cv-00133-MP-EMT,

2006 WL 839157, at *5 (N.D. Fla. Mar. 28, 2006) (finding that a 3/4 of an inch disparity in the length of the plaintiff's legs "does not rise to the level of a serious medical need").

Moreover, even if the Court assumes, for purposes of this decision only, that the Plaintiff's leg length discrepancy is a serious medical need, the Plaintiff fails to present evidence that any of the defendants were deliberately indifferent to that need.

The Plaintiff argues that the URC should have ordered that he be examined by an orthopedist, not a podiatrist, and that Defendant Furey should have referred him to an orthopedist.  To the extent that this argument is based on the Plaintiff's interpretation of the settlement agreement, the claim is not cognizable in this action.  The Court considers only whether examination by a podiatrist constitutes deliberate indifference to the Plaintiff's serious medical needs.

The Plaintiff assumes that the evaluation of a leg length discrepancy to determine whether orthopedic shoes are needed must be done by an orthopedist. The Plaintiff provides no medical authority for his assumption.  The Court notes that several websites include articles indicating that podiatrists detect and treat leg length discrepancies.  See, e.g., www.podiatrytoday.com/articles/1035 ("Detecting and Treating Leg Length Discrepancies," Vol. 15, Pub. Date 12/1/02) (last visited Dec. 15, 2009); www.podiatrytoday.com/article/2698 ("How to Evaluate for Leg Length Discrepancy, Vol. 17, Pub. Date 6/1/04) (last visited Dec. 15, 2009); www.ncbi.nlm.nih.gov/pubmed/1545368 (noting that examining for limb length

discrepancy is an important part of a podiatric exam) (last visited Dec. 15, 2009).

Thus, scheduling the Plaintiff to be seen by a podiatrist rather than an orthopedist

does not demonstrate deliberate indifference to a serious medical need.

The Defendants have provided copies of the Plaintiff's medical records

relevant to this claim.  The records consistently show that the examining

podiatrist determined that the Plaintiff did not require special footwear and

prescribed him a heel lift to be used in footwear available in the commissary.  See

Defs.' Local Rule 56(a) Statement, Ex. B.  The Plaintiff has not provided any

contrary medical opinion.  The medical records also show that the Plaintiff did not

utilize the lift.  Although the Plaintiff alleges that following the prescribed

treatment caused him pain, this is not reflected in the medical records.  The only

reference to pain was when the Plaintiff was refusing to use the prescribed lift.

The Plaintiff is not entitled to the treatment of his choice.  See Chance, 143

F.3d at 703.  Thus, the mere fact that he prefers corrective footwear over using a

lift does not suffice to state an Eighth Amendment claim of deliberate indifference

to medical needs.  See Turner v. Solorzano, 228 Fed. Appx. 922, 923-24 (11th Cir.

2007) (prisoner failed to establish claim for deliberate indifference to serious

medical need where medical staff provided lift to accommodate leg length

discrepancy but refused inmate's request for special shoes).  The fact that the

URC relied on the treating podiatrist's medical opinion in denying the Plaintiff's

request for special footwear does not demonstrate deliberate indifference.

The Plaintiff further argues that summary judgment should be entered in his

**10**

favor on his deliberate indifference claim because Defendant Ruiz did not respond to his interrogatories.  Fed. R. Civ. P. 56(f) provides that the court may order a continuance or deny a motion for summary judgment if the non-moving party shows by affidavit that "for specified reasons, it cannot present facts essential to justify its opposition."  The Plaintiff includes this statement in his memorandum in opposition to the Defendants' motion for summary judgment and in support of his own cross-motion for summary judgment.  <u>See</u> Doc. #32, Mem. at 18.  However, he has not submitted an affidavit as required by Fed. R. Civ. P. 56(f).  The Plaintiff is aware of the requirement of an affidavit as he was supplied a copy of Rule 56 in the Notice to Pro Se Litigant Opposing Motion for Summary Judgment as Required by Local Rule of Civil Procedure 56(b).  <u>See</u> Doc. #29.

In addition, the Plaintiff fails to indicate what information that he sought from defendant Ruiz would assist him in opposing the motion, that is, what information he requested from Defendant Ruiz as a non-examining physician that would demonstrate deliberate indifference to a serious medical need.  Accordingly, the Plaintiff's motion for summary judgment is denied and the Defendants' motion for summary judgment is granted on the Plaintiff's deliberate indifference claim.

### D.  <u>Denial of Due Process</u>

Finally, the Plaintiff argues that the Defendants, in particular Defendant Furey, violated his right to due process by improperly handling and failing to timely respond to his grievance appeal.  The Plaintiff contends that he has a

**11**

protected liberty interest because the prison directives describing the grievance process use mandatory language.  The cases the Plaintiff cites to support his position, however, predate the Supreme Court's ruling in <u>Sandin v. Connor</u>, 515 U.S. 472 (1995), in which the Supreme Court held that mandatory language alone is insufficient to create a protected liberty or property interest.

Procedural due process ensures that the government utilizes fair procedures.  To state a claim for violation of procedural due process, the Plaintiff must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. <u>See</u> <u>Tellier v. Fields</u>, 280 F.3d 69, 80 (2d Cir. 2000).  He has a protected liberty interest only if the state created a liberty interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship.  <u>Id.</u>

State-created inmate administrative remedy procedures do not create a protected liberty interest.  Thus, Fourteenth Amendment due process protections are not implicated regardless of the actions taken by the defendants in connection with the Plaintiff's administrative filings.  <u>See</u> <u>Rhodes v. Hoy</u>, No. 9:05-CV-836, 2007 WL 1343649, at *2 (N.D.N.Y. May 5, 2007).  Several Courts of Appeals that have considered this issue agree that inmates do not have a constitutionally protected liberty interest in having prison officials comply with institutional grievance procedures.  <u>See, e.g.</u>, <u>Grieveson v. Anderson</u>, 538 F.3d 763, 772 (7th Cir. 2008); <u>Thomas v. Warner</u>, 237 Fed. Appx. 435, 437-38 (11th Cir. 2007); <u>Rhoades</u>

**12**

**v. Adams**, 194 Fed. Appx. 93, 95 (3d Cir. 2006); **Geiger v. Jowers**, 404 F.3d 371, 373-74 (5th Cir. 2005) **Ramirez v. Galaza**, 334 F.3d 850, 860 (9th Cir. 2003); **Buckley v. Barlow**, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam).  Thus, the Plaintiff has failed to establish a claim for denial of due process based upon the Defendants' failure to follow the prison's grievance procedures.  Consequently, the Plaintiff's motion for summary judgment is denied [4] and the Defendants' motion for summary judgment is granted on this claim.

### IV.   Conclusion

Based upon the above reasoning, the Plaintiff's Motion for Summary Judgment [Doc. #32] is DENIED.  The Defendants' Motion for Summary Judgment [Doc. #30] is GRANTED.  The Clerk is directed to enter judgment in favor of the Defendants and to close this case.

IT IS SO ORDERED.

_____
/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  April 8, 2010.

---

[4]  The Plaintiff also argues that summary judgment should be granted in his favor on this claim because the Defendants have not responded to discovery requests that would provide evidence showing that his grievance appeal was mishandled.  The Court has determined that the Plaintiff has no protected interest in having grievance procedures followed.  Thus, any evidence of mishandling would not alter the Court's analysis of this claim.

13